UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DELTA FAUCET COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01222-SEB-DML |
| | ) | |
| KOHLER CO., | ) | |
| | ) | |
| Defendant. | ) | |

## CLAIM CONSTRUCTION ORDER

Plaintiff Delta Faucet Company ("Delta Faucet") sued defendant Kohler Company ("Kohler") for infringement of its patent U.S. Patent No. 7,360,723 ("the '723 patent"). By their *Joint Claim Construction and Prehearing Statement*, Dkt. 42, the parties identified five disputed claim terms.[1] A *Markman* hearing was held on May 11, 2018.

The Court's construction of the disputed terms is set forth below.

### The '723 Patent

The '723 patent, issued to Moty Lev in 2008, discloses a "showerhead system with integrated handle." '723 Patent, at [54]. More specifically, the invention comprises two showerheads: a "fixed fluid dispensing unit," *id.* at col. 2 ll. 52–53, in effect a standard showerhead mounted to the shower wall, and a "removable fluid dispensing unit," *id.* at col. 2 l. 53, a second showerhead *cum* handle which the user may either attach to the first,

---

[1] The parties originally identified nine disputed terms, but both sides have represented that three of those disputes have been resolved *inter se*, and, of the remaining six, two are duplicates.

"form[ing] an integral dispensing face[,]" *id.* at col. 2 l. 57, or remove and use separately. Water may be dispensed through either or both showerheads at the user's option.

The following four embodiments are drawn and described in the patent application:



*Id.* at figs. 2, 6–8.

Here is the invention as practiced and marketed by Delta Faucet:



Pl.'s Opening Br. (Dkt. 49) 2.

For reference, here are Kohler's accused products:

 

Def.'s Opening Br. (Dkt. 47) 3.



*Id.* at 4.

The '723 patent contains 27 claims. Two are independent: claim 1, from which depend claims 2 through 18; and claim 19, from which depend claims 20 through 27. Claim 1 recites the following, with disputed terms numbered and italicized:

> A showerhead system for communicating a fluid supply, said showerhead system comprising:
>
> a fixed fluid dispensing unit supported at a location, said fixed dispensing unit comprising at least one nozzle in fluid communication with the fluid supply;
>
> a removable fluid dispensing unit **[1.]** *releasably secured* to **[2.]** *a receptacle established with said fixed dispensing unit* forming **[3.]** *an integral dispensing face* with said fixed dispensing unit and comprising at least one additional nozzle being connected to a hose in fluid communication with the fluid supply when said removable fluid dispensing unit is dissociated from said fixed fluid dispensing unit; and
>
> the fluid supply adapted to being in selective communication with at least one of said fixed and said removable fluid dispensing unit.

'723 Patent col. 6 ll. 5–20. Claim 5, depending from claim 1, recites the following:

The showerhead system as described in claim 1, wherein said fixed fluid dispensing unit has **[4.]** *a recess to which is matingly engaged said removable unit.*

*Id.* at col. 6 ll. 30–32. Claim 11, also depending from claim 1, recites the following:

The showerhead system as described in claim 1, further **[5.]** *comprising a fluid inlet associated with said fixed dispensing unit*, a fluid diverter element fluidly communicating said fluid supply with said at least one said [*sic*] fixed and removable dispensing units.

*Id.* at col. 6 ll. 49–53.

Claim 19 recites the following:

A showerhead system for communicating a fluid supply, said showerhead system comprising:

a fixed fluid dispensing unit supported at a location, said fixed dispensing unit comprising a plurality of nozzles in fluid communication with the fluid supply;

a removable fluid dispensing unit **[1.]** *releasably secured* to **[2.]** *a receptacle established with said fixed dispensing unit* forming **[3.]** *an integral dispensing face* with said fixed dispensing unit and comprising at least one additional plurality of nozzles being connected to a hose in fluid communication with the fluid supply when said removable fluid dispensing unit is dissociated from said fixed fluid dispensing unit; and

**[5.]** [*comprising*] *a fluid inlet associated with said fixed dispensing unit*, a fluid diverter element fluidly communicating said fluid supply with at least one of said fixed and removable dispensing units.

*Id.* at col. 7 ll. 12–28. Claim 20, depending from claim 19, recites the following:

The showerhead system as described in claim 19, wherein said fixed fluid dispensing unit has **[5.]** *a recess to which is matingly engaged said removable unit.*

*Id.* at col. 8 ll. 1–3.

Patent claims are "the portion of the patent document that defines the scope of the patentee's rights[.]" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "[T]he claims made in the patent are the sole measure of the grant[.]" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

As with interpretations of various other written instruments, the ultimate meaning of a patent claim is a question of law reserved to the court, *Markman*, 365 U.S. at 372, though claim construction is a "mongrel practice," *id.* at 378, in which the trial judge may be called on to make subsidiary factual findings. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836 (2015). A court's claim construction order should be drafted as clearly and concisely as possible, with an eye toward its use in jury instructions at trial. *See AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001). In this connection, it is critical that the court "not prejudge the [jury's] ultimate infringement analysis by construing claims with an aim to include or exclude an accused product . . . ." *Wilson Sporting Goods Co. v. Heinrich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir.

---

[2] We take pains here to explicate the statutory and precedential context for performing the relatively straightforward task at hand both to remind and reassure the parties of the basis of the Court's analysis.

2006). Simply, "'claims may not be construed with reference to the accused device.'" *Id.*

at 1330 (quoting *NeoMagic Corp. v. Trident Microsys., Inc.*, 287 F.3d 1062, 1074 (Fed.

Cir. 2002)). "Th[is] rule, however, does not forbid *awareness* of the accused product . . .

to supply the parameters and scope of . . . claim construction . . . [,]" *id.* at 1331

(emphasis added), and it is often "'convenient for the court to concentrate on those

aspects of the claim whose relation to the accused device is in dispute.'" *Id.* at 1327

(quoting *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999)).

"'A court construing a patent claim seeks to accord a claim the meaning it would

have to a person of ordinary skill in the art at the time of the invention[,]'" *Phillips*, 415

U.S. at 1313 (quoting *Innova*, 381 F.3d at 1116), the person to whom the patent is

understood to be chiefly addressed. *See id.* (citing *Verve, LLC v. Crane Cams, Inc.*, 311

F.3d 1116, 1119) (Fed. Cir. 2002)). Because "a patent must describe the exact scope of an

invention . . . to 'secure to the patentee all to which he is entitled, and to apprise the

public of what is still open to them[,]'" *Markman*, 517 U.S. at 373 (quoting *McClain v.

Ortmayer*, 141 U.S. 419, 424 (1891)) (alterations omitted), "it is 'unjust to the public, as

well as an evasion of the law, to construe [a patent claim] in a manner different from the

plain import of its terms.'" *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S.

47, 52 (1886)). The "'ordinary and customary meaning'" of claim terms to one of

ordinary skill in the art is thus the "objective baseline" of claim construction. *Id.* at 1312–

13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"In some cases, the ordinary meaning of claim language as understood by a person

of skill in the art may be readily apparent even to lay judges," *id.* at 1314, and even to lay

juries deliberating on an infringement claim. "[T]he role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims to obviate factual questions of infringement and validity . . . ." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011). District courts are thus not "required to construe *every* limitation present in a patent's asserted claims. . . . Rather, 'claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)) (alteration omitted).

Accordingly, where a limitation is not the subject of legitimate dispute or a "no construction" ruling resolves the parties' dispute, the limitation may go to the jury for application of its "plain and ordinary meaning" to the accused product, so long as the jury is not asked to choose between meanings. *See, e.g., Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001). By contrast, where a limitation is disputed and its "plain and ordinary meaning" is not readily apparent to a lay reader or does not resolve the parties' dispute, the court must construe it. *See, e.g., O2 Micro*, 521 F.3d at 1361–62 (parties disputed scope, not meaning, of term).

When the meaning (or scope) of a claim term to one of ordinary skill in the art is not readily apparent, "the court looks to 'those sources available to the public that show

what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314. Construction proceeds from the language of the claim terms read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent . . . ." *Id.* at 1313. Because "'[i]t is the person of ordinary skill in the field of the invention through whose eyes the claims are construed, . . .the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.,* the patent specification and the prosecution history[,]'" the so-called "intrinsic" evidence relating to the patent. *Id.* (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

"To begin with, the context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314. The limitation in which the term appears may be instructive, as well as other limitations in the same claim, and other claims in the same patent. For example, "claim terms are normally used consistently throughout the patent[.]" *Id.* And the doctrine of claim differentiation holds that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation is not present in the independent claim." *Id.* at 1315.

Further, "[i]n light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Id.* at 1316; *see* 35 U.S.C. § 112(a) (requiring written description "in such full, clear, concise, and exact terms"). Accordingly, "claims 'must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en*

*banc*), *aff'd*, 517 U.S. 370). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics*, 90 F.3d at 1582). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Società Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

Yet it is axiomatic that a claim is not necessarily limited by an embodiment disclosed in the specification, and that limitations appearing in the specification are therefore not to be imported wholesale into the claim language. *See Phillips*, 415 F.3d at 1323; *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204–05 (Fed. Cir. 2002) (citing cases); *SciMed Life Sys., Inc. v. Adv. Cardiovasc. Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) ("one of the cardinal sins of patent law"). District courts must therefore "walk [a] tightrope" between reading the claims in light of the specification and reading the specification into the claims. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1373 (Fed. Cir. 2007). "Much of the time," the Federal Circuit has counseled, "upon reading the specification in context, it will become clear whether the patentee is setting out specific examples to accomplish [the statutorily required] goals [of teaching and enabling the invention], or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Phillips*, 415 F.3d at 1323.

"In addition to consulting the specification, . . . a court 'should also consider the patent's prosecution history, if it is in evidence.'" *Id.* at 1317 (quoting *Markman*, 52 F.3d at 980). This (also called the "file history" or the "file wrapper") includes "the complete

record of the proceedings before the PTO and . . . the prior art cited during the examination of the patent." *Id.* (Prior art cited and distinguished in the specification is part of the intrinsic record as well. *See, e.g.*, *SciMed*, 242 F.3d at 1342.) "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Still, the prosecution history may aid the court by disclosing how the applicant used and understood the patent language and "by demonstrating . . . whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

Finally, the Federal Circuit has "also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). Such evidence "can help educate the court regarding the field of the invention . . . [,]" but is "in general . . . less reliable than the patent and its prosecution history" and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318–19.

"There are only two exceptions" to the "general rule" that "[t]he words of a claim are . . . given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history": "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or

during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313; *Vitronics*, 90 F.3d at 1580).

In sum, the Court's task is to give the disputed claim terms their meanings to one of ordinary skill in the art when read in light of the entire patent, informed as necessary by the prosecution history. Noncontradictory extrinsic evidence may be used to support or further clarify the meaning so disclosed. We undertake this task mindful of the twin dangers of underconstruction, inviting the jury to decide a question of law reserved to the court, and overconstruction, trenching on the jury's duty to apply the patent claims to the accused products.

## Claim Construction

### I. Disputed Terms 1 and 2[3]

| | |
|---|---|
| *Disputed Term 1:* | "releasably secured [to]" |
| *Delta Faucet:* | [Delta Faucet contends no construction is needed.] |
| *Kohler:* | "held firmly in position to the receptacle such that the connection with the receptacle attaches the removable portion to the fixed portion until intentionally released" |
| *Disputed Term 2:* | "a receptacle established with said fixed dispensing unit" |
| *Delta Faucet:* | "an area of the fixed dispensing unit that receives or holds" |
| *Kohler:* | "an area of the fixed dispensing unit formed to receive and seat an associated outer perimeter of the removable dispensing unit upon that removable unit being mounted within the fixed unit" |

---

[3] Where a disputed term appears in multiple claims, we have selected the first claim in which it appears as representative and cited to that appearance only. Neither party has suggested that any disputed term appearing more than once should be given a different construction in its different appearances.

Though the parties briefed and argued Disputed Terms 1 and 2 separately, the *Markman* hearing revealed that division to be artificial; the two phrases should be viewed as informing rather than opposing one another. We thus construe the two terms together as follows: "secured, in such a way that it can be released, to an area on or in the fixed dispensing unit formed to receive the removable dispensing unit upon itself or within itself, and formed to assist in securing it or to accommodate its being secured."

*"Releasably."* While maintaining that the word speaks for itself and no construction is needed, Delta Faucet glosses "releasably" as "in such a way that it can be released." Pl.'s Opening Br. 9. We agree that no construction is needed but find Delta Faucet's gloss to be somewhat clearer and thus more readily understood by a jury without change in meaning than is the term itself. Because "releasable" sounds somehow "technical," it may invite needless juror speculation beyond its plain and ordinary meaning. Kohler's proposed construction similarly does not elaborate on "released." But Kohler's "until released" does not track the meaning of "releasably," and Kohler's "intentionally" finds no support in the '723 patent. Any number of securements may be accidentally released, and nothing in the '723 patent suggests that its claims are limited to securements capable only of intentional release.

*"Secured."* Kohler proposes "held firmly" for "secured," but we agree with Delta Faucet that "secured" speaks for itself. Nothing in the claims or the specification indicates how "firm" or "loose" the attachment of the releasable unit to the fixed unit must be; the claim language indicates only that the attachment must be "secure." It is

possible to imagine a "loose" securing or securement. *See, e.g.*, U.S. Pat. No. 9,970,593 col. 4 ll. 32–33 (filed July 13, 2017).

*Receptacle.*" The parties agree that "receptacle" means "an area of the fixed dispensing unit" for receiving. Delta Faucet contends further that the receptacle receives "or holds"; Kohler says that the receptacle receives "and seats." We agree with Kohler that Delta Faucet's disjunctive is inappropriately broad. It wrongly suggests that a "receptacle" need not "receive" after all, but may merely "hold." But we agree with Delta Faucet that Kohler has not justified "seats." Plainly and ordinarily, a "receptacle" is a thing that receives or is made to receive. Kohler has not persuaded us that, in the context of the '723 patent, a "receptacle" must also be a thing that seats or is made to seat. Rather, "seats" appears is an impermissible importation from the specification, where, in reference to the receptacle, the word appears precisely once. '723 Patent col. 3 l. 61 to col. 4 l. 3 ("Referring . . . to Figs. 1, 2 and 5, . . . [a]s . . . is best shown in Fig. 2, an apertured cutout . . . is formed in the fixed dispensing unit and seats an associated outer perimeter of the removable dispensing unit . . . ." (reference numbers omitted)).[4]

*Established with.*" Delta Faucet contends that the receptacle "receives," Kohler that the receptacle is "formed to receive." Kohler's is the better reading in our view. "The receptacle, properly construed, is not merely an area where the fixed and removable dispensing units are held together." Def.'s Opening Br. 7. Delta Faucet's construction

---

[4] It appears again in the '723 patent only once and then only in reference to the operation of a particular securement, a spring-loaded pin mechanism. '723 Patent col. 5 ll. 31–57 ("Referring now to Fig. 8 . . . [r]eplacement of the removable unit depresses the pin which again seats within a complementary indentation in the handle." (reference numbers omitted)).

elides the provision that the receptacle be "established with" the fixed dispensing unit. Delta Faucet's construction suggests that the receptacle is merely an arbitrary point ("a location," in the language of the '723 patent, col. 6 l. 7) on the fixed dispensing unit to which the removable dispensing unit is secured. Were this so, there would be nothing "established with" the fixed dispensing unit. The removable dispensing unit would be secured simply to the fixed dispensing unit, rather than to something "established with" it. Kohler's "formed to receive" better captures the claim language to the effect that what is "established with" a certain feature is itself a feature—some definite, geometrically distinct component that is superadded to its substrate—and is accordingly "formed" for its purpose of receiving.

Both parties construe "receptacle established with" as "an area of," to this extent leaving undetermined the geometry of the receptacle relative to its surroundings. But Kohler's construction proceeds to insist that "established with" must mean "established *within*." "Receptacles receive. And they receive within. They surround, at least partially, the thing they are receiving." Def.'s Opening Br. 7–8. Accordingly, argues Kohler, the receptacle must have a concave geometry such that it is formed *within* the fixed dispensing unit and receives the removable dispensing unit *within* itself.

Claim differentiation creates a presumption that Kohler is incorrect. Claim 5, depending from claim 1, recites, "The showerhead system as described in claim 1, wherein said fixed fluid dispensing unit has a recess to which is matingly engaged said removable unit." '723 Patent col. 6 ll. 30–32. Delta Faucet argues that, accordingly, a "recess," an indisputably concave feature, must be distinct from a "receptacle." Kohler

answers that claim 5 includes the additional distinct limitation of "mating engagement"; thus, distinguishing "recess" from "receptacle" is not necessary to avoid "mak[ing] [claim 5] superfluous[.]" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). True, but there is still the presumption of "a difference in meaning and scope when different words or phrases are used in separate claims." *Id. See also Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Claim differentiation . . . is clearly [not *solely*] applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims.").

Presuming, therefore, that "recess" and "receptacle" are distinct limitations, we must ask, distinct in what respect? Not in respect to function, for claim 5 reveals that the "recess" performs a receiving function when the removable dispensing unit is "matingly engaged" to it. The "recess" thereby "receives" the removable dispensing unit within itself. That leaves the distinction in respect to form: a "recess" is formed in a receding, concave shape; a "receptacle" need not be so formed. *See LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1354 (Fed. Cir. 2001) ("dependent claim . . . presumptively narrower" than independent claim). Accordingly, we presume that a "receptacle" may receive without "receiving within."

This presumption Kohler is unable to overcome. Kohler points to the preferred embodiments disclosed in the specification. For example, in the embodiment drawn in figures 1 through 5,

> a receptacle is formed *within* the fluid dispensing head
> associated with the fixed unit and is illustrated by *recessed*
> side **26** and base surface **28**. . . . [The removable unit is
> formed] such that it may be mechanically and releasably
> secured *within* the side **26** and base *recessed* surface **28**
> formed *in* the fixed dispensing unit **14**. . . . [A]n apertured
> *cutout* . . . is formed *in* the fixed dispensing unit **14** and seats
> an associated *outer perimeter* **29** of the removable dispensing
> unit **30** upon the same being mounted *within* the *recessed* side
> **26** and base surface **28** of the fixed head.

'723 Patent col. 3 ll. 51–54, 64–67; col. 4 1–4 (referring to fig. 2) (emphases added).

Kohler points as well to the embodiments disclosed in figures 6 through 8. "In each of

those illustrations," says Kohler, "and as described by the specification, the receptacle

formed 'seats an associated outer perimeter **29** of the removable dispensing unit.'" Def.'s

Opening Br. 9 (quoting '723 patent col. 4 ll. 1–3) (citing figs. 1, 2, 6–8). Kohler's

position also finds support in the "Abstract" of the invention, which describes the

invention as follows: "A removable fluid dispensing unit is releasably secured to a

receptacle established *within* the fixed dispensing [unit][.]" '723 Patent at [57] (emphasis

added). It finds further support in the "Background of the Invention" in the specification,

which describes the invention as follows: "The removable fluid dispensing unit is

releasably secured to a receptacle formed *within* the body of the fixed unit . . . ." *Id.* at

col. 1 l. 66 to col. 2 l. 1 (emphasis added).

Nevertheless, we are not persuaded by this argument. Kohler's argument to the

effect that, because the disclosed embodiments share a configuration, the configuration is

required by the patent, is an impermissible importation of the specification into the claim.

It is true that the patent abstract and the summary of the invention recite "within" in

reference to the invention generally, but even outside the claim language, the '723 patent does not use "within" consistently. '723 Patent col. 2 ll. 53–57 ("[A] removable fluid dispensing unit [is] releasably secured to a receptacle therefor associated with the fixed dispensing unit such that the fixed dispensing unit and removable dispensing unit in a secured relationship form an integral dispensing face."); *see also id.* at col. 3 ll. 54–59 ("In a preferred embodiment, the receptacle surfaces are formed along an axial centerline associated with the fixed dispensing head; however it is understood that the receptacle may also be formed in a side-by-side arrangement or other asymmetric fashion relative to the fixed head[.]").

These inconsistent usages do not constitute the "unambiguous evidence" required to find disavowal of claim scope. *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513 (Fed. Cir. 2015). Here as elsewhere, Kohler has neglected the Federal Circuit's admonition that a disclaimer "requir[es] 'words or expression of manifest exclusion or restriction' in the intrinsic record." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). The Federal Circuit has found "statements such as 'the present invention includes . . . ,' 'the present invention is . . . ,' and 'all embodiments of the present invention are . . . ' to be clear and unmistakable statements constituting disavowal or disclaimer." *Id.* (citing *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016)). No such words of "manifest exclusion or restriction" appear in the specification of the '723 patent, *id.*, and Kohler never argues that they do.

No matter the wording outside the claim language, the claim language itself recites "with." This markedly unusual phrasing (unusual in that one would expect a more spatially definite preposition) counsels reluctance in amending "with" to become "within," given that the patentee had to go out of his linguistic way to claim "with." And the '723 patent, in both its claims and its specification, repeatedly recites that the removable dispensing unit is secured "to," not "in," the receptacle or the fixed dispensing unit. *See, e.g.*, '723 Patent col. 2 l. 54, col. 4 l. 10, col. 5 l. 32. Nothing in the claim language requires that "with" mean "within." For example, figure 6 of the '723 patent shows the removable dispensing unit fitted from below into a concavity formed in the fixed dispensing unit above it. But the relative configurations of the removable and fixed dispensing units could just as well be reversed: the removable dispensing unit could be fitted from above onto a convexity formed on the fixed dispensing unit beneath it.

The Court's construction embodies the above analysis. In place of the parties' "area of the fixed dispensing unit," our construction provides, "area on or in the fixed dispensing unit." "Area of" too readily suggests Delta Faucet's formless-location construction rejected for the reasons already stated. The more definite prepositions "on" and "in" give greater spatial particularity to the "receptacle" as a formed, shaped feature of the fixed dispensing unit while occupying the field of possible configurations and thus preserving Delta Faucet's full claim scope. Our construction provides "formed to receive upon itself or within itself" for the same reasons. The last clause, "formed to assist . . . ," simply makes explicit that, while the receptacle need not be the means by which the

removable dispensing unit is secured, it may be such means or a part of such means, and in any event facilitates rather than frustrates its securing.

## II. Disputed Term 3

*Term:*                   "an integral dispensing face"

*Delta Faucet:*           "a combined dispensing face"

*Kohler:*                 "a single face for dispensing liquid, formed by the securing of the removable dispensing unit to the fixed dispensing unit, which face has a flush continuous surface and at least one similar array of nozzles where the fixed and removable units adjoin each other"

The Court construes Disputed Term 3 as follows: "an integrated dispensing face."

*"Integral."* Delta Faucet proposes "combined" for "integral." However, this is not what "integral" means. In their plain and obvious senses, "integral" is a property of the part (*e.g.*, "an integral part of the plan"); "integrated" is a property of the whole (*e.g.*, "an integrated plan"). Here, the whole dispensing face that results from the combination of the fixed and removable parts is referred to. At the *Markman* hearing, both parties agreed that, whatever further construction may be necessary, "integrated" is preferable to "integral" without change of meaning or loss of claim scope. But with the emendation of "integral" to "integrated," we agree with Delta Faucet that the term does not require further construction.

*"Dispensing face."* Kohler argues that "the claim language, specification, and file history make clear that ['integral dispensing face'] is much narrower" than Delta Faucet's proposed construction. Def.'s Opening Br. 12. The distinguishing operative language in Kohler's construction includes "a single face"; "a flush continuous surface"; and "similar

array of nozzles." But neither the claim language nor the specification nor the prosecution history justifies this prolixity.

Kohler's only argument from claim language is that "the integral dispensing face is formed by virtue of the two dispensing units being secured to each other." *Id.* So far, the parties agree.

Kohler next points to the embodiment of the invention described in the specification and drawn in figure 6. Referring to figure 6, the specification discloses "an alternate configuration" of the invention, '723 Patent col. 4 ll. 61–62, wherein "[t]he removable dispensing unit **68** has a spray head **69** including fluid dispensing nozzles **32** forming a spray face **70**, the face **70** *continuous* with fixed spray face **66**." '*Id.* at col. 5 ll. 1–4 (emphasis added). Similarly, Kohler points to the embodiment drawn in figures 1 through 5. Here, the specification discloses, "The removable unit **30** includes at least one plurality of fluid dispensing nozzles and, in a preferred embodiment, may include a first array of nozzles **32** formed in a planar extending face associated with the removable unit. The array of nozzles **32** are [*sic*] *similar* to the nozzles **20** which are formed across the face of the fixed unit **14**." *Id.* at col. 4 ll. 15–20.

These embodiments, clearly identified as such, are the only source for Kohler's proposed limitation of a "continuous" surface with "at least one similar array of nozzles where the fixed and removable units adjoin each other." But as Delta Faucet points out, again Kohler commits one of the "cardinal sins" of patent law by importing the specification into the claims. Pl.'s Opening Br. 16 (quoting *Phillips v. AWH Corp.*, 415

F.3d 1303, 1320 (Fed. Cir. 2005) (*en banc*)). As noted above, Kohler does not attempt to ground this limitation in any aspect of the claim language itself.

As to the "flush[ness]" of the "integral dispensing face," Kohler makes an argument from the prosecution history to the effect that the applicant definitionally limited the patent claims to distinguish them over the prior art. In the course of prosecution, the examiner called the applicant's attention to two prior art references: U.S. Patent No. 2,949,240, issued to Koolnis ("Koolnis"), and U.S. Patent Appl. Pub. No. 2004/0205891, issued to Zhadanov ("Zhadanov").



*Zhadanov, figure 1*

*Koolnis, figure 1*

The figures above show Koolnis having a removable unit screwed into the center of a fixed unit, and Zhadanov having a removable unit docked to the side of the entire fixture and not secured to a fixed unit at all.

In an "Office Action" dated February 7, 2007, the examiner rejected *inter alia* (what was then and is still) claim 1 as being anticipated both by Koolnis and Zhadanov. The examiner noted,

> Koolnis shows a showerhead system including a fixed
> dispensing unit having a face with a plurality of nozzles
> formed therethrough; and a removable dispensing unit having
> a plurality of nozzles, the removable dispensing unit being
> releasably secured to [i.e., screwed into] a recess of the fixed
> unit, the recess extending along a substantial centerline
> associated with the fixed dispensing unit; wherein the fluid
> supply is adapted to being in selective communication with at
> least one of the fixed and removable units.

Dkt. 48 Ex. 3, at 7–8 (citations and reference numbers omitted). And as to Zhadanov, the

examiner noted,

> Zhadanov shows a showerhead system including a fixed
> dispensing unit including at least one nozzle; and a removable
> dispensing unit including at least one additional nozzle, the
> removable unit being releasably secured to a recess; a fluid
> inlet; a fluid diverter element permitting selective
> communication of the fluid supply to at least one of the fixed
> and removable units; and a conduit communicating the fluid
> diverter with the removable fluid dispensing unit.

*Id.* at 8 (citations and reference numbers omitted).

To overcome the examiner's rejections, the applicant faxed a proposed

amendment to claim 1 to the examiner on April 24, 2007, inserting the underlined

language as follows:

> A showerhead system . . . comprising . . . a removable fluid
> dispensing unit releasably secured to a receptacle established
> with said fixed dispensing unit, said removable fluid
> dispensing unit comprising at least one additional nozzle in
> fluid communication with the fluid supply and forming an
> integral dispensing face with said fixed dispensing unit . . . .

Dkt. 48 Ex. 5, at 5 (citations omitted). The applicant contended that, with the proposed

amendments, the invention would be "distinguishable from Koolnis because upon

removal of the 'removable fluid dispensing unit' of Koolnis [i.e., unscrewing the

removable head from the recess of the fixed head], the unit is no longer in fluid communication with the fluid supply[.]" *Id.* (citations and reference numbers omitted). The applicant contended further that the invention would be "distinguish[able] from Zhadanov because [the] fixed dispensing unit and the removable dispensing unit of Zhadanov do not form an integral dispensing face[.]" *Id.* (citations and reference numbers omitted).

An interview held on April 26, 2007, was summarized by the examiner on May 1, 2007, as follows:

> The examiner indicated that the proposed amendments to claim 1 would overcome the cited prior art of Zhadanov[;] however[,] the examiner did not believe that the proposed amendments to claim 1 would overcome the cited prior art of Koolnis. Applicant's representative had indicated on the faxed proposal that the proposed changes would be distinguishable from Koolnis because 'upon removal of the removable fluid dispensing unit of Koolnis, the unit is no longer in fluid communication with the fluid supply.' However, although this statement is true, it is not commensurate with the limitations of claim 1 as proposed. The examiner then made a suggestion (with respect to distinguishing claim 1 over the Koolnis reference) to also include a limitation to the effect of, [']wherein the at least one additional nozzle of the removable unit is in fluid communication with the fluid supply when the removable fluid dispensing unit is removed from the fixed dispensing unit.[']

*Id.* at 4 (reference numbers omitted). On May 7, 2007, the applicant's representative similarly summarized the April 26, 2007, interview as follows:

> Applicant's representative had indicated on a faxed proposal that at least one additional nozzle "in fluid communication with the fluid supply and forming an integral dispensing face with said fixed dispensing unit" would distinguish the present

invention from the prior art. The Examiner suggested also
including a limitation to the effect of, [']where the at least one
additional nozzle of the removable unit is in fluid
communication with the fluid supply when the removable
fluid dispensing unit is removed from the fixed dispensing
unit. The substance of the interview is reflected in the
simultaneously filed amendment.

Dkt. 48 Ex. 6, at 2. The amendment inserted the underlined language as follows:

A showerhead system . . . comprising . . . a removable fluid
dispensing unit releasably secured to a receptacle established
with said fixed dispensing unit <u>forming an integral dispensing
face with said fixed dispensing unit</u> and comprising at least
one additional nozzle <u>being connected to a hose in fluid
communication with the fluid supply when said removable
fluid dispensing unit is dissociated from said fixed fluid
dispensing unit</u> . . . .

Dkt. 48 Ex. 4, at 6. No further amendment to claim 1 appears to have been made on these

points, as the amended language mirrors the language of the '723 patent as issued.

The upshot of this prosecution history, Kohler argues, is that

[t]he applicant told the examiner that the addition of the
phrase "forming an integral dispensing face with said fixed
dispensing unit" helped overcome an anticipation rejection
based on Koolnis. . . . The difference between the 2-in-1
dispensing face of Koolnis and the '723 patent is the
flushness of the two faces where the dispensing units meet
each other. . . . Koolnis shows the entirety of one dispensing
face protruding beyond the other. . . . [T]he claim limitation
must mean more than simply "a combined dispensing face" as
proposed by [Delta Faucet] because Koolnis discloses a
combined dispensing face, but not, according to the applicant,
"an integral dispensing face."

Def.'s Opening Br. 15. Not so, says Delta Faucet:

When viewed in the context of the entire prosecution history,
the patentee was distinguishing Koolnis on the basis of a lack
of "at least one additional nozzle being connected to a hose in

> fluid communication with the fluid supply when said
> removable fluid dispensing unit is dissociated from said fixed
> fluid dispensing unit" and separately distinguishing Zhadanov
> as lacking "a removable fluid dispensing unit releasably
> secured to a receptacle established with said fixed dispensing
> unit, forming an integral face with said fixed fluid dispensing
> unit."

Pl.'s Opening Br. 24–25.

Delta Faucet has the better argument here. From the applicant's own mouth: with the proposed faxed amendments of April 24, 2007, his invention would be "distinguish[able] from *Zhadanov* because [the] fixed dispensing unit and the removable dispensing unit of *Zhadanov* do not form an *integral dispensing face*[.]" Dkt. 48 Ex. 5, at 5 (emphasis added) (citations and reference numbers omitted). At the April 26, 2007, interview, the examiner agreed "that the proposed amendments to claim 1 would overcome the cited prior art of Zhadanov." *Id.* at 4. The examiner's continuing problem with Koolnis related only to the communication between the removable unit and the fluid supply, which the subsequent round of amendment resolved, entirely without reference to the "integral dispensing face."

In any event, whatever ambiguity on this point may appear from the prosecution history cannot justify a prosecution disclaimer of claim scope, which "must be both clear and unmistakable to one of ordinary skill in the art." *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (quotations, citation omitted); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("Where the alleged disavowal is . . . 'amenable to multiple reasonable interpretations,' we have declined to find prosecution disclaimer." (citation omitted)).

## III. Disputed Term 4[5]

*Term:*                  "a recess to which is matingly engaged said removable unit"

*Delta Faucet:*          "an indentation/receding part to which is matingly engaged said removable fluid dispensing unit"

*Kohler:*                "an indented area set back from the main surface of the fixed dispensing unit which is configured to match the corresponding shape of the removable dispensing unit"

The Court construes Disputed Term 4 as follows: "a recess to which the removable dispensing unit is mated."

*"Recess."* We reject both parties' proposals that "indentation" effectively captures the meaning of "recess." A careless driver may put an "indentation" into a car door, but the owner is unlikely to tell the body shop there is a "recess" in her door. Conversely, a statue located in an alcove stands in a "recess," but is unlikely to stand in an "indentation." The plain and ordinary meaning of "recess," in context, is appropriate (as Delta Faucet, at least, appears to concede by its proposed "receding part").

*"Matingly engaged."* Kohler is correct that "mating" (specifically, the metaphor embodied in it) requires close correspondence of shape, as, for example, in the case of male-female connectors. However, Kohler's proposal does not capture the full meaning of the disputed term. Kohler's "is configured to match" explains "matingly" but abandons "engaged."

---

[5] At the *Markman* hearing, the parties' jointly proposed, and we accepted, submitting the construction of Disputed Terms 4 and 5 on the briefs only.

In the absence of a full construction from Kohler, and in view of Delta Faucet's failure to construe "matingly engaged" at all, we conclude that the idea of a "mating" or "mated" connection is familiar enough to permit a jury to apply its plain and ordinary meaning. For clarity's sake, we have replaced "matingly engaged" with "mated," a more concrete and vivid expression which surrenders none of the original meaning.

## IV. Disputed Term 5[6]

Term:                 "[a showerhead system] comprising a fluid inlet associated with said fixed dispensing unit"

Delta Faucet:         [Delta Faucet contends no construction is needed.]

Kohler:               [Kohler contends no construction is needed.]

In the absence a genuine dispute between the parties, the Court finds that no construction of Disputed Term 5 is appropriate.

## Conclusion

For the reasons explained above:

DISPUTED TERMS 1 and 2 are construed as follows: "secured, in such a way that it can be released, to an area on or in the fixed dispensing unit formed to receive the removable dispensing unit upon itself or within itself, and formed to assist in securing it or to accommodate its being secured."

DISPUTED TERM 3 is construed as follows: "an integrated dispensing face."

DISPUTED TERM 4 is construed as follows: "a recess to which the removable dispensing unit is mated."

---

[6] See note 4 *supra*.

The Court declines to construe DISPUTED TERM 5.

IT IS SO ORDERED.


Date: _____6/11/2018_____          _Sarah Evans Barker_____

                                        SARAH EVANS BARKER, JUDGE
                                        United States District Court
                                        Southern District of Indiana

Distribution:

R. Trevor Carter
FAEGRE BAKER DANIELS LLP (Indianapolis)
trevor.carter@faegrebd.com

Leslie B. Hayden
FAEGRE BAKER DANIELS LLP (Denver)
leslie.hayden@faegrebd.com

Daniel James Lueders
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
lueders@uspatent.com

Jonathan H. Margolies
MICHAEL BEST & FRIEDRICH LLP
jhmargolies@michaelbest.com

Trenton B. Morton
FAEGRE BAKER DANIELS LLP (Indianapolis)
trenton.morton@faegreBD.com

Melanie J. Reichenberger
MICHAEL BEST & FRIEDRICH, LLP
mjreichenberger@michaelbest.com

Katherine W. Schill
MICHAEL BEST & FRIEDRICH LLP
kwschill@michaelbest.com

JD Schneider
FAEGRE BAKER DANIELS LLP
jd.schneider@faegrebd.com